# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| TARAN HELMS, | ) CASE NO. 4:15-cv-00950 |
| ) | |
| Petitioner, | ) JUDGE JEFFREY J. HELMICK |
| ) | |
| v. | ) MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| ALAN LAZAROFF, Warden | ) |
| ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) |

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to Local

Rule 72.2(b)(2).  Before the court is the petition of Taran Helms ("Helms" or

"Petitioner"), for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. No.

1.)  Petitioner is in the custody of the Ohio Department of Rehabilitation and Correction

pursuant to journal entry of sentence in the case of *State of Ohio vs. Helms*, Mahoning

County Case No. 2008-CR-382.  For the following reasons, the magistrate judge

recommends that the petition be DENIED.

## I.  Factual Background

The state appellate court that affirmed Petitioner's conviction and sentence

noted the following relevant facts:

> [*P3]  On April 3, 2008, Taran Helms and his accomplice Hattie
> Gilbert were indicted by the Mahoning County Grand Jury on counts
> of attempted murder, felonious assault, aggravated robbery, and
> kidnapping, as well as four accompanying firearm specifications.
> The charges arose from a series of events that occurred on March
> 24, 2008, wherein the victim, Joseph Kaluza, was robbed and shot
> while on the way to make a bank deposit for his employer.  As he
> headed for the bank, a blue-gray Saturn pulled in front of his car and

suddenly stopped in front of him, causing Kaluza's car to collide with the Saturn.  Kaluza phoned his district manager to report the accident, then called the police. Immediately following the accident, a man came up from behind Kaluza's vehicle and shot Kaluza in the neck.  The man took the deposit money, pushed Kaluza's car to a more secluded spot, and threatened to shoot Kaluza again.  The man then fled on foot.  Police investigations eventually led to the arrests of Appellant and Gilbert.

[*P4]  The joint trial for Appellant and Gilbert commenced on September 15, 2008.  Joseph Kaluza testified that he was a manager for a Kentucky Fried Chicken restaurant.  One of his duties was to take the restaurant's deposits to the bank.  While he was driving to the bank on March 24, 2008, a car decelerated suddenly in front of him.  He could not stop quickly enough to avoid hitting the rear of Gilbert's vehicle.  Kaluza immediately called the police and the area manager for his restaurant.  Gilbert got out of her car and asked to use Kaluza's cellular phone.  After she used the phone and returned it to Kaluza she then returned to her car.  Immediately thereafter, Appellant appeared at the driver's side of Kaluza's car and without warning shot Kaluza in the neck, instantly paralyzing him.  Appellant walked to Gilbert's car, motioned for her to leave, then returned to Kaluza's car and, after an initial search of the vehicle, pushed it off of the main road and onto a side street in front of an abandoned house.  Appellant then looked in the car for the deposit bag, which contained only $300.00.  Once he found it, he said to Kaluza: "Where's the rest of the money, or I'm gonna shoot you in the head."  (Tr., p. 1569.)  Kaluza testified that, at that point, a man in a truck stopped next to his car and asked if Kaluza and Appellant needed help.  Appellant declined the offer of assistance.  Appellant then hurriedly grabbed another bag in the car (which turned out to be trash) and ran off.

[*P5]  Kaluza also testified that Kimberly Helms, Appellant's mother, had worked at Kaluza's restaurant and knew the deposit procedure, but she was fired the prior spring for theft.

[*P6]  Kandace Johnson testified that she lived in a house a short distance away from where the incident occurred.  Johnson saw Appellant walk from Ravenwood Street onto South Avenue, the main street where the accident occurred.  Helms approached Kaluza's car and fired a shot into the car without breaking his stride.  Appellant went to Gilbert's car and spoke with her for a minute.  Johnson saw Appellant immediately return to Kaluza's car and start "fumbling around," by reaching into the car through the driver's side window.

2

(Tr., p. 1611.)  Johnson saw Helms push the car, turn the car off, fumble around a bit more, then push the car off of South Avenue and onto a side street, Hilton Avenue.  Johnson estimated that 90 seconds elapsed between the gunshot and moving the car.  Johnson saw Appellant continue to search in Kaluza's car on the front passenger's side.  Johnson then saw Appellant run through a yard as tow-trucks arrived at the scene.

[*P7]  Jeremy Vignon, the passerby in the truck, testified that he saw Kaluza sitting in his car shortly after the incident occurred. As he drove by, Vignon noticed that Kaluza was slumped over and bleeding. Vignon decided to turn around and go back to the scene as Appellant finished pushing the car onto Hilton.  Vignon asked Appellant if he needed any help.  Appellant responded that he only had a flat tire.  Vignon drove off, but noticed that the car did not have a flat tire, and called the police.  Vignon circled around again, and when he returned to the scene, Appellant was running through the yard and tow trucks were arriving.

[*P8]  David White, a tow truck driver for Ludt's Towing, arrived on the scene as Appellant was rummaging through Kaluza's vehicle. He and Mr. Vignon both observed Appellant leave Kaluza's vehicle and run through a backyard heading north, carrying an object in his hand.

[*P9]  Law enforcement officers testified regarding their investigation of the incident. Police arrived on the scene shortly after the occurrence and realized that a potential homicide had taken place. Officer Justin Coulter and a K-9 unit were called to the scene to search the area. Coulter started the search near the spot where Kaluza's vehicle had come to rest.  The dog immediately began to track a scent.  His tracking first led to a firearm.  Next, the dog led Officer Coulter around a fence to a black and orange jacket laying on the ground.  The dog followed the scent to a footprint behind a garage, but lost the track soon after that.

[*P10]  Detective Sergeant John Kelty testified that he interviewed Appellant and Gilbert after police found Appellant's wallet in Gilbert's car and after learning of Appellant's mother's prior employment at the Kentucky Fried Chicken restaurant.  Gilbert admitted to police that she staged the accident so that the robbery could take place. She watched from her rearview mirror as Appellant shot Kaluza. She heard the gun go off, and saw Kaluza's head slump forward. After speaking with Helms, she drove away.

3

[*P11]  Various items of physical and scientific evidence were admitted during trial, including a video of the accident captured by a WRTA bus; a spent shell casing from the crime scene; a gun, coat, cap, and mask from the crime scene; the Bureau of Crime Investigation's lab results, which found Appellant's DNA on the gun, coat and mask; and items retrieved from Gilbert's car, including a box of bullets and Appellant's wallet.

[*P12]  Neither Appellant nor Gilbert presented a defense.

*State v. Helms*, 2012 Ohio App. LEXIS 1010, 2012-Ohio-1147 (Ohio Ct. App., Mar. 20, 2012) (hereinafter "*Helms II*").

## II.  Procedural History

### A.  Trial Court Proceedings

On April 3, 2008, a Mahoning County Grand Jury indicted Helms on one count of attempted murder in violation of Ohio Revised Code ("O.R.C.") § 2923.02(A) & 2903.03(A)(D); one count of felonious assault in violation of O.R.C. §2903.11(A)(2)(D); and one count of aggravated robbery in violation of O.R.C. §2911.01(A)(1)(C).  (Doc. No. 5-1, Exh. 1.)  All counts carried firearm specifications.  (*Id*.)  On May 22, 2008, the prosecution issued a superseding indictment adding one count of kidnapping in violation of O.R.C. §2905.01(A)(2)(C) with firearm specifications.  (Doc. No. 5-1, Exh. 3.)  Helms pleaded not guilty.  (Doc. No. 5-1,Exhs. 2 & 4.)

The case proceeded to trial and, on September 18, 2008, a jury returned a verdict of guilty as charged.  (Doc. No. 5-1, Exh. 5)  On September 23, 2008, the court held a sentencing hearing.  (Doc. No. 5-1, Exh. 6.)  Helms was sentenced to ten (10) years imprisonment for attempted murder and three (3) years for the firearm specification; eight (8) years for felonious assault and three (3) years for the firearm

specification; ten (10) years for aggravated robbery and three (3) years for the firearm specification; and, ten (10) years for kidnapping and three (3) years for the firearm specification.  (*Id*.)  The sentences for all four convictions and accompanying specifications were ordered to be served consecutively for an aggregate sentence of fifty (50) years.  (*Id*.)

**B.**    **Direct Appeal**

On October 3, 2008, Helms, through counsel, filed a Notice of Appeal with the Seventh District Court of Appeals ("state appellate court").  (Doc. No. 5-1, Exh. 7.) Helms, through new counsel, raised the following assignments of error:

1.    The trial court committed reversible error when it sentenced Appellant Helms to multiple sentences for allied offenses of similar import committed with a single animus, in violation of Helm's [sic] rights under the Fifth, Sixth, and Fourteenth, Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

2.    The trial court committed reversible error when it failed to merge all firearm specifications contained in the indictment in violation of O.R.C. 2929.14(D)(1)(b) and in violation of Helm's [sic] rights under the Fifth, Sixth, and Fourteenth, Amendments to the United States Constitution.

3.    The trial court abused its discretion and denied Appellant Helms his right to a fair trial by an impartial jury when it overruled his motion for a change of venue, in violation of Helm's [sic] rights under the Fifth, Sixth, and Fourteenth, Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

4.    The trial court abused its discretion and denied Appellant his right to a fair trial when it denied Helm's [sic] motion for relief from prejudicial joinder to a fair trial in violation of Helm's [sic] rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

5

(Doc. No. 5-1, Exh. 8.)  On September 29, 2010, the state appellate court affirmed Helms' convictions, but found the firearm specifications should merge and that the felonious assault and attempted murder convictions should also merge as allied offenses.  *State v. Helms*, 2010 Ohio App. LEXIS 4109, 2010-Ohio-4872 (Ohio Ct. App., Sept. 29, 2010) (hereinafter "*Helms I*").[1]  The case was remanded for resentencing.  (Doc. No. 5-1, Exh. 10.)

On November 12, 2010, the State of Ohio filed a notice of appeal with the Ohio Supreme Court.  (Doc. No. 5-1, Exh. 11.)  In its memorandum in support of jurisdiction, the State raised one proposition of law:

> 1.   Shooting a person in the head (attempted murder), which paralyzes him instantly, then minutes later, threatening to shoot him again in the head (felonious assault) are not allied offenses of similar import, because each offense was committed with a separate animus; Therefore, the offenses cannot merge pursuant to the double jeopardy clause of the Fifth Amendment, Section 10, Article I of the Ohio Constitution, and Ohio Revised Code §2941.25.

(Doc. No. 5-1, Exh. 12.).

Helms filed a notice of cross-appeal.  (Doc. No. 5-1, Exh. 13.)  Helms opposed the State's memorandum in support, simultaneously filing his own memorandum in support of jurisdiction, raising the following two propositions of law:

> 1.   Kidnapping and aggravated robbery are allied offenses of similar import pursuant to O.R.C. 2941.25.
>
> 2.   Where extensive pre trial [sic] publicity exists and racial epithets are written in the courthouse during jury selection a change of venue should be granted without further demonstration of

---

[1]  The dissenting judge opined that Helms' subsequent threat to shoot the victim a second time was a separate felonious assault and the offenses should not merge.  *Helms*, 2010-Ohio-4872 at ¶131.

6

prejudice.

(Doc. No. 5-1, Exh. 14.)

On February 22, 2011, the Supreme Court of Ohio accepted jurisdiction of the State's appeal and dismissed Helms' cross-appeal. (Doc. No. 5-1, Exh. 16.) The Supreme Court vacated the state appellate court's judgement as it related to Helms' first assignment of error and remanded the matter so the appellate court could apply the holding of *State v. Johnson*, 128 Ohio St.3d 153; 2010-Ohio-6314; 942 N.E.2d 1061 (Ohio 2010).

Upon remand from the Supreme Court of Ohio, Petitioner, represented by counsel, filed a supplemental brief with the state appellate court on April 8, 2011, raising one assignment of error:

> The trial court committed reversible error when it sentenced Appellant Helms to multiple sentences for allied offenses of similar import committed with a single animus, in violation of Helm's [sic] rights under the Fifth, Sixth, and Fourteenth, Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

(Doc. No. 5-1, Exh. 17.)

On April 21, 2011, the State filed its brief arguing that "[t]he trial court properly sentenced [Helms] to consecutive terms of incarceration on all counts, as they were not allied offenses of similar import." (Doc. No. 5-1, Exh. 18.) The State expressly argued that the attempted murder conviction was supported by Helms shooting the victim in the neck, while the felonious assault conviction was supported by Helms' subsequent threat against the victim that he would shoot him again – an act the State argued supports a separate animus. (*Id*.) Thereafter, the state filed a notice of supplemental authority. (Doc. No. 5-1, Exh. 19.) Helms did not file a reply.

7

On March 30, 2012, the state appellate court determined that the offenses for which Helms was convicted were allied offenses, but, because they were committed with a separate animus, they would not merge for sentencing. *Helms*, 2012-Ohio-1147 ("*Helms II*").  The state appellate court remanded for resentencing solely for purposes of merging the four firearm specifications into a single firearm specification.  (Doc. No. 5-1, Exh. 20.)

Helms, through counsel, filed an application for reconsideration pursuant to Ohio App. R. 26(A) arguing that the state appellate court's earlier decision in *Helms I* – that the felonious assault and attempted murder convictions were allied offenses which should merge – was law of the case.  (Doc. No. 5-1, Exh. 21.)  Furthermore, Helms asserted that the State never argued at trial or on direct appeal that the threat subsequent to the shooting of the victim was the factual basis for the felonious assault conviction rather than the shooting itself.  (*Id.*)  The State filed a brief in opposition. (Doc. No. 5-1, Exh. 22.)  On December 18, 2013, the state appellate court denied the motion for reconsideration finding that the Supreme Court of Ohio specifically overturned its holding in *Helms I* and that the state appellate court properly conducted a *de novo* review on remand.  (Doc. No. 5-1, Exh. 23.)

On January 27, 2014, Helms, represented by counsel, filed a Notice of Appeal with the Supreme Court of Ohio and raised the following propositions of law:

> PROPOSITION OF LAW I: The doctrine of judicial estoppel prevents the State from raising an argument on appeal against merger of allied offenses that is inconsistent with one unequivocally asserted at trial. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶21-22; *State ex rel. Motor Carrier Sen., Inc. v. Rankin*, 135 Ohio St.3d 395, 2013-0hio-1505, 987 N.E.2d 670, ¶33.

8

> PROPOSITION OF LAW ll: A criminal defendant's constitutional
> guarantees of due process, a fair trial, the right to confront witnesses
> against him, and protection from double jeopardy are violated when the
> State asserts one argument against merger of allied offenses at trial and
> then asserts a different, inconsistent argument against merger on appeal
> *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 LF..d.2d 636
> (1986).

(Doc. No. 5-1, Exhs. 24 & 25.)

On May 14, 2014, the Supreme Court of Ohio declined to accept jurisdiction of

the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  (Doc. No. 5-1, Exh. 27.)

### III.  Proceedings in this Court

On May 14, 2015, Petitioner filed his § 2254 petition.[2]  (Doc. No. 1.)  He asserted

the following grounds for relief:

> **GROUND ONE**: By asserting a new argument against merger on appeal
> that is inconsistent with arguments made against merger at trial, the
> prosecution deprives a criminal defendant of his or her constitutionally
> guaranteed rights to due process, a fair trial, confront witnesses, and be
> protected from double jeopardy.  *Crane v. Kentucky*, 476 U.S. 683 (1986).

(Doc. No. 1.)

### IV. Procedural Issues

**A.    Jurisdiction**

A state prisoner may file a § 2254 petition in "the district court for the district

wherein such person is in custody or in the district court for the district within which the

State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d).  The

Court of Common Pleas of Mahoning County, Ohio sentenced Petitioner.  (Doc. No. 5-

---

[2]  On May 28, 2015, Petitioner filed a motion for appointment of counsel, which the
Court granted on July 1, 2015.  (Doc. No. 3.)

1, Exh. 6.) Mahoning County is within this Court's geographic jurisdiction. *See* 28 U.S.C. § 115(a). Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

**B.    Exhaustion and Procedural Default**

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and a federal court must dismiss his petition. *See* *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *See* *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990). Fair presentment of a claim in a federal constitutional context requires a petitioner to apprise the state courts that his claim is a federal claim, rather than "merely . . . an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

Similarly, a federal court may not review "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is

barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* *501 U.S. 722, 750 (1991)*.

If the State argues that a petitioner has procedurally defaulted, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

The Respondent, in a reply to the traverse, asserts that Helms' sole ground for relief is procedurally defaulted because it was not fairly presented to the Ohio courts. (Doc. No. 13 at pp. 3-9.) In a surreply, Petitioner contends that Respondent waived the procedural default defense because it was not raised in the Answer/Return of Writ. (Doc. No. 16 at p. 2.) The Court disagrees with the contention that Respondent has waived procedural default. The exact contours of Helms' sole ground for relief were not

altogether clear in the cursory petition Helms filed.  (Doc. No. 1 at pp. 20-21.)  In his

traverse, Helms clarified that his claim was "not about whether his felonious assault and

aggravated murder convictions were allied offenses subject to merger."  (Doc. No. 10 at

p. 4.)  Instead, Helms explained that he believed his constitutional rights were violated

because the State's theory at trial was inconsistent with its theory on direct appeal.  (*Id*.)

While Petitioner alluded to this argument in the petition, Respondent's confusion is

understandable as Helms' sole purported claim actually reads as an amalgamation of

numerous claims: due process, double jeopardy, right to confront witnesses, and a right

to a fair trial.  (Doc. No. 1.)  Furthermore, any potential prejudice stemming from

Respondent's belated assertion of procedural default was negated by the Court

permitting Helms to file a surreply wherein Helms attempts to refute the contention that

his claim is defaulted.  (Doc. Nos. 15 & 16.)

Returning to Respondent's default argument, he asserts that Helms failed to

appropriately raise on direct appeal his claim that the State's inconsistent theories at

trial and on direct appeal violated his due process rights.  Specifically, Respondent

contends that this distinct argument, inspired by the dissent's analysis in *Helms II*, was

first raised in Helms' Ohio App. R. 26(A) motion for reconsideration.  (Doc. No. 13 at p.

6.)  On this point, Petitioner appears to agree.  In his surreply, Petitioner contends that

he fairly presented his sole habeas claim by raising it in a timely motion for

reconsideration pursuant to Ohio App. R. 26(A).  (Doc. No. 16 at pp. 3-4.)

As such, the dispute over whether the claim was fairly presented depends

entirely upon whether a claim raised in a motion for reconsideration satisfies the

requirement that an issue be given a full-round of review.  "[S]tate prisoners must give

12

the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999*).  Under Ohio law, a constitutional question cannot ordinarily be raised before the Ohio Supreme Court unless it was first presented to the intermediate appellate court.  *See State v. Jester, 32 Ohio St.3d 147, 154, 512 N.E.2d 962, 966 (1987*).  Moreover, Ohio law prohibits a defendant from raising issues in collateral proceedings that could have been litigated on direct appeal.  *Engle v. Isaac, 456 U.S. 107, 125 n. 28 (1982)*; *Collins v. Perini, 594 F.2d 592 (6th Cir. 1979)*.

Under Ohio law, "[t]he test generally applied in reviewing an App.R. 26(A) motion for reconsideration, 'is whether the motion calls to the attention of the court an obvious error in its decision or raises an issue for the court's consideration that was either not considered at all or was not fully considered by the court when it should have been.'" *State v. Gilbert, 2013 Ohio App. LEXIS 4980, 2013-Ohio-4783 at ¶3 (Ohio Ct. App., Oct. 29, 2013)* (*quoting State v. Wong, 97 Ohio App.3d 244, 246, 646 N.E.2d 538 (Ohio Ct. App.1994)*); *accord State v. Wheeler, 2005 Ohio App. LEXIS 518, 2005-Ohio-479 at ¶7 (Ohio Ct. App., Feb. 1, 2005)* ("noting that App.R. 26(A) does not specify an exact standard against which such a request should be measured" but approving the above quoted test set forth in *Wong*); *Kennedy v. Kennedy, 2003 Ohio App. LEXIS 1018, 2003-Ohio-1078 (Ohio Ct. App., Mar. 7, 2003)*.  The Court cannot affirmatively find that this standard would have precluded Helms from raising an argument in the Rule 26(A) petition not explicitly raised in his supplemental brief.  The *Helms II* court expressly

cited *Wong*, but denied the motion for reconsideration because Helms "has not cited any obvious errors or raised any issues that were not considered in his direct appeal..." 2013-Ohio-5530 at ¶¶1-3.  Notably, the state appellate court did not refuse to consider the motion for reconsideration or find that it was barred from doing so because the arguments raised were new.  *Id*.  Furthermore, Respondent fails to cite any binding precedent holding that a petitioner failed to fairly present a claim where it was raised before the state appellate court in a motion for reconsideration and also before the state's highest court.  Therefore, the Court finds that Helms sufficiently raised his claim before both the state appellate court, which had an opportunity to consider it, and also before the Supreme Court of Ohio.  As such, Helms' sole ground for relief is not procedurally defaulted.

## VI.  The Merits of Petitioner's Claims

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its *dicta*, and the law must be clearly established at the time of the petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been

more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id.* at 520-21 (internal citations and quotation marks omitted).

## B.  Due Process

In his traverse, Helms clarified that his claim was "not about whether his felonious assault and aggravated murder convictions were allied offenses subject to merger," but rather "seeks only to address whether his constitutional rights were violated when the state asserted a novel theory on appeal that was inconsistent with its theory during trial."  (Doc. No. 10 at p. 4.)  More specifically, Helms claims that he was denied due process and the opportunity to present a meaningful defense when the prosecution argued during closing arguments that both the attempted murder charge and the felonious assault charge were supported by the evidence that Helms fired a single gunshot at the victim.[3]  (Doc. No. 10 at p. 6.)

In relevant part, the state appellate court found as follows:

[*P32]  The dissent also contends that there is a due process problem in relying on the evidence of Appellant's threat to kill Kaluza as proof of felonious assault because that set of facts does not correspond to the prosecutor's theory of the case set forth in the opening and closing arguments.  The issue in a review of allied offenses, though, does not involve due process, but whether double jeopardy occurred in sentencing a person twice based on the same set of facts.  Whether or not the prosecutor's theory of the case as articulated in its opening and closing remarks corresponds to the actual evidence presented is not under review when examining the record for allied offenses.  Obviously, opening and closing statements are not evidence.  "It is well settled that statements

_____

[3]  Based on Petitioner's representation in the traverse, the Court deems all other claims Petitioner raised or attempted to raise in the petition waived or withdrawn, save for the due process argument revolving around the claim that the State used inconsistent theories at trial and on appeal.

made by counsel in opening statements and closing arguments are not evidence." *State v. Frazier*, 73 Ohio St.3d 323, 338, 1995 Ohio 235, 652 N.E.2d 1000 (1995).  In reviewing a sentence for allied offenses, we normally look at the entire record and review the entire set of facts and circumstances as presented to the trier of fact.  We do not exclude particular properly admitted facts from our consideration simply because we believe the jury was paying more attention to the prosecutor's opening and closing remarks rather than the actual presentation of the evidence.  The jury is free to match the facts presented at trial to the elements of the crime as stated in the indictment.  The indictment here does not specify any facts regarding felonious assault except that Kaluza was the victim and that it occurred on March 24, 2008.  The bill of particulars does not provide any further explanation about the details of felonious assault.  There was no objection filed regarding the felonious assault charge in the indictment or the bill of particulars.  There was no objection made to Kaluza's testimony regarding Appellant's threat to shoot him in the head.  There was no clarification requested in the jury instructions about felonious assault.  We find nothing in the record that would limit our normal procedure of viewing the entire record as part of the consideration in determining whether there were allied offenses.  Based on the record, Appellant committed a felonious assault that is not an offense allied to any other crime in this case.  Thus, the trial court properly imposed a separate sentence for that crime.

*Helms II*, 2012-Ohio-1147 at ¶¶32.

Helms asserts that the State changed its theory on appeal and argued, for the first time, that only the attempted murder charge was supported by the single gunshot while the felonious assault charge was supported by the evidence that Helms threatened to shoot the victim again at some point subsequent to the first shooting. (Doc. No. 10 at p. 6.)  A review of the records reveals that Helms' description of the State's closing argument at trial is correct.  The prosecution argued as follows:

> The first charge, attempted murder.  Defendant, Taran Helms, and Hattie Gilbert, purposely attempted to cause the death of Joseph Kaluza in Mahoning County.  Purposely attempt.  You take a gun with a live round, and you walk next to someone's car and in point blank range you shoot that round into his neck, is there any question in your mind what the intent is?  You've got to eliminate the only witness.

* * *

Felonious assault.  Defendants Taran Helms and Hattie Gilbert knowingly caused or attempted to cause physical harm to Joseph Kaluza by means of a deadly weapon.  Again, we know that a gun was used.  We know that it was the shot that caused his injury, that caused instant paralysis, and we know that that gun was found near the crime scene.

(Doc. No. 14-10, Vol. X, Tr. 2220-2221.)

In the first round of direct appeal before the state appellate court, the State argued that felonious assault and attempted murder were not allied offenses when comparing the statutes in the abstract.  (Doc. No. 5-1, Exh. 9 at p. 14.)  The State did not set forth a factual theory as to which actions of Helms supported each conviction.  (*Id*.)  However, on appeal to the Supreme Court of Ohio, the State asserted that "[s]hooting a person in the head (attempted murder), which paralyzes him instantly, then minutes later, threatening to shoot him again in the head (felonious assault) are not allied offenses of similar import, because each offense was committed with a separate animus."  (Doc. No. 5-1, Exh. 12.)

Therefore, while Petitioner is correct that the State appears to have offered a different factual theory underpinning the convictions on appeal than used during closing argument, the question remains whether such an action provides Petitioner a basis for habeas relief.  Petitioner cites *Crane v. Kentucky* for the general proposition that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" 476 U.S. 683, 690 (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  Neither case is remotely similar to the facts at hand.  In *Crane*, the Supreme Court held that the exclusion of  testimony concerning the circumstances of a 16-year-old defendant's confession – the principal component of the State's case –

18

deprived petitioner of his fundamental constitutional right to present a defense.  476 U.S. 683.  In *Trombetta*, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment did not require law enforcement agencies to preserve breath samples in drunk driving cases in order to introduce the results of breath-analysis tests at trial.  467 U.S. 479.[4]  Here, Helms has not argued that he was prevented from introducing any evidence in violation of the federal Constitution nor has he argued that the admission of any evidence against him was  in violation of the federal Constitution. These cases are inapposite.  Petitioner cannot credibly argue that the State's varying theories prevented him from presenting a defense.  Prior to closing argument and prior to even knowing what factual theories the State would present during closing argument, Petitioner, with the aid of counsel, chose not to call any witnesses or otherwise present a defense.  (Doc. No. 14-10, Vol. 10, Tr. 2184.)  In other words, had the State presented the same factual theory during closing argument as it did on appeal, Helms would have been unable to call any witnesses or further cross-examine any of the State's witnesses after already resting his case.  Petitioner asserts that his counsel would have cross-examined the victim concerning the alleged threat Helms made

---

    [4]  Helms also cites *Medina v. California*, 505 U.S. 437 (1992) for the proposition that state action that deprives a defendant of a fundamentally fair trial violates the Due Process Clause.  (Doc. No. 10 at p. 8.)  Helms does not explain how the State's theory as presented in closing argument deprived him of a fundamentally fair trial, nor does he acknowledge the cautionary language in *Medina* that states "[i]n the field of criminal law, we 'have defined the category of infractions that violate 'fundamental fairness' very narrowly' based on the recognition that, '[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* at 443 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  Similarly, Helms cites *Griffin v. United States*, 502 U.S. 46, 54 (1991) for the blanket proposition that a verdict cannot stand on grounds that are unconstitutional.  Helms concludes, without any legal authority, that his conviction violates due process and, therefore, is unconstututional.  (Doc. No. 10 at p. 10.)

19

against him had he known the State's theory that would presented on appeal.  (Doc. No. 10 at p. 9.)  However, this is quintessential hindsight advocacy, as Helms did not know prior to the close of evidence what theory the State would ultimately advance during closing argument.  Petitioner's argument, therefore, is entirely speculative and his suggestion that the State's change in its factual theory on appeal deprived him of the opportunity to present a meaningful defense lacks merit.

In sum, Helms has not identified any clearly established federal law, as determined by the Supreme Court of the United States, suggesting that the State cannot raise a factual theory on appeal different from the theory expressed during closing arguments.  Perhaps recognizing a lack of such Supreme Court precedent, Helms relies on various circuit court decisions.  (Doc. No. 10 at pp. 10-11.)  Helms quotes *Stumpf v. Houk*, 653 F.3d 426, 437 (6th Cir. 2011) as stating: "[T]o allow a prosecutor to advance irreconcilable theories without adequate explanation undermines confidence in the fairness and reliability of the trial and the punishment imposed and thus infringes upon the petitioner's right to due process."  That case is inapposite for several reasons.  First, the *Stumpf* decision was applied to a set of facts significantly different from those presented in the case at bar.  In *Stumpf*, the petitioner plead guilty and, during a death penalty hearing before a three-judge panel, the State argued Stumpf was the primary offender/shooter in a fatal shooting during a robbery.  653 F.3d at 429.  Conversely, during a subsequent trial of Stumpf's co-conspirator, the State argued that the co-conspirator was the primary offender/shooter.  *Id*.  Moreover, during a rehearing after remand from the United States Supreme Court, the Sixth Circuit found no due process violation:

20

To state Stumpf's claim is to refute it.  Nothing misleading or deceitful happened here.  The prosecution did not present a different and incomplete set of facts in support of different theories of culpability for the same crime....  It did not offer different (and contradictory) testimony from the same witness in Wesley's trial, without  acknowledging the contradiction....  And it did not omit evidence of Wesley's or Stumpf's guilt or innocence from its presentation....  Eastman's evidence did not exist during Stumpf's original sentencing proceeding.  After the State presented Eastman's hearsay statement in Wesley's trial and Stumpf moved for relief, the State stipulated to the evidence's admissibility.  Then, three panels in Stumpf's case were able to consider the mitigating evidence at issue, Eastman's claim that Wesley had admitted to firing the shots that killed Mrs. Stout.  Each had the opportunity to weigh that evidence against all of the other evidence in the record.  Despite Eastman's testimony, each concluded that the death penalty was appropriate.  All that the prosecution did was to argue for two different inferences from the same, unquestionably complete, evidentiary record.  It left the factfinder in Wesley's trial and the factfinders in Stumpf's post-sentencing proceedings to find the facts.  This, without more, does not offend the Due Process Clause.

*Stumpf v. Robinson*, 722 F.3d 739, 749 (6th Cir. Ohio 2013) (citations omitted), *cert. denied* 134 S. Ct. 905 (2014).

The remaining cases cited by Helms are all similarly inapposite.  (Doc. No. 10 at pp, 10-11.)  They all involve the prosecution's use of inconsistent theories as it relates to separate defendants tried separately, both of whom are accused of committing the exact same offense.  *See Thompson v. Calderon*, 120 F.3d 1045, 1058 (9th Cir. 1997) ("[I]t is well established that when no new significant evidence comes to light a prosecutor cannot, in order to convict two defendants at separate trials, offer inconsistent theories and facts regarding the same crime."), *rev'd and remanded by* 523 U.S. 538 (1998); *Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000) (finding that the State's use of inherently factually contradictory theories in trials for different defendants for the same offenses arising out of the same event violates the principles of due

21

process, but noting that "[t]o violate due process, an inconsistency must exist at the core of the prosecutor's cases against defendants for the same crime."); *United States v. Fulks*, 683 F.3d 512, 524 (4th Cir. 2012) ("[i]n some situations, the Due Process Clause prohibits the government from presenting mutually inconsistent theories of the same case against different defendants.") (citations omitted).  Helms also cited a dissenting Supreme Court opinion where it was opined that "serious questions are raised 'when the sovereign itself takes inconsistent positions in two separate criminal proceedings against two of its citizens.'" *Jacobs v. Scott*, 513 U.S. 1067 (1995) (Stevens, J. dissenting).  The above cases do no constitute clearly established federal law as determined by the United States Supreme Court.  Moreover, even if the Court were to find the general principle in the above cases to be fairly established, the above cases simply have no bearing on Helms's habeas claim.  Petitioner would have this Court ignore the pivotal fact that these cases found inconsistent theories by the State spanning separate prosecutions of separate defendants accused of the same exact criminal act implicated due process.  Those scenarios are completely absent from Helms's case.  Helms asks this Court to find that these cases are established precedent for the principle that any inconsistency in the State's factual theory during a single defendant's trial up until the final appeal also violates due process.  The Court declines to read the above cases so expansively.

The only case truly on point cited by Petitioner is the dissenting opinion in *Helms II*, but a dissenting state court opinion does not define the contours of clearly established federal constitutional law.  As such, Helms has failed to show that the state

22

appellate court's decision violated any clearly established federal law.[5]

## VII. Conclusion.

For all the reasons set forth above, the petition should be DENIED.


Date: July 6, 2016                                          /s/ Nancy A. Vecchiarelli
                                                           United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

---

[5]  The Court also does not consider the two factual theories by the State to be inconsistent.  Petitioner's act of shooting the victim in the head could certainly form the basis of felonious assault, as could the later threat by Helms to shoot the victim a second time.

23